Court of Chancery. New Castle. April 19, 1824.

*Ridgely's Notebook IV, 412.*

---

## JANCEY VINCENT,[1] Widow of Solomon Vincent, v. WILLIAM PARSONS, SR., WILLIAM PARSONS, JR., and GEORGE PARSONS.

Orphans' Court. Sussex. July 22, 1824.

*Ridgely's Notebook IV, 428.*

*Elisha Cullen, Esq.,* appears for the defendants.  .  .  .

THE CHANCELLOR. Solomon Vinson, the father of Solomon Vinson, the husband of the petitioner, being seised of an equitable estate in fee in the lands mentioned in the petition, devised the same to Betty, his wife, during her widowhood, and after the determination of that estate, to the said Solomon, the husband, in fee. Benjamin Vinson, who was seised in fee of the legal estate in the said lands and had made a written contract with the

---

[1] In the Chancellor's opinion the name appears as "Vinson," and in the testimony of the witnesses (omitted herein) the two spellings are used interchangeably.

testator to sell them to him in fee, and had been paid the consideration money by him, afterward, on the 10th February, 1812, conveyed the same to Solomon, the husband, in fee, reserving to Betty, the widow of the testator, a life estate therein. Thus Benjamin executed the contract he had made with the testator by conveying such estates to the widow and son of the testator as he had devised to them.

Solomon, the husband, the remainderman, occupied the lands under Betty, the widow, the tenant for life, and paid rent to her for part, and otherwise held the other part under her, from the death of the testator until he was about to sell his interest in the same to the respondent, William Parsons, in the year 1816. In August of that year, the said husband, being about to move from Delaware into the State of Ohio, made a public sale or *vendue* of his personal estate, and proposed to sell these lands, but no purchaser offered for them on account of the outstanding life estate of the widow of the testator. On the same day, she, the widow, afterward agreed verbally with her son, the husband of the petitioner, that her interest in the lands should be sold in consideration of $200 to be paid to her; and then William Parsons agreed to become the purchaser of the whole estate in the lands. No money was paid that day, nor was any writing or deed then signed or executed. Afterward, on the 2nd October of the same year, Solomon Vinson paid his mother, the tenant for life, $200, which she acknowledged by a written receipt of the same day, in the following words, "Received October 2, 1816, of Solomon Vinson the sum of two hundred dollars for my dower in the miner land." By "the miner land," the land devised as aforesaid was understood. On the same day the tenant for life and Solomon Vinson, the remainderman, conveyed by deed of bargain and sale the lands to the respondent, William Parsons, in fee.

The question is whether Solomon, the husband of the petitioner, was so seised of the said lands in his lifetime, that the petitioner, the widow, is entitled to dower therein.

I am of opinion that there was no seisin in the husband during the coverture, which entitled his widow to dower. He, as remainderman, was seised of his remainder at the same time that the tenant for life became seised of her life estate; but to entitle a widow to dower, the husband should have the freehold and inheritance in him at the same time. For instance, if a lease is made for life rendering rent, the lessor marries and dies, his wife shall not be endowed of the rent or land; not of the land, because the husband was not seised of the freehold during coverture; and the rent was but a freehold for life. Co.Litt. 32a, Bac. Abr. (Wilson's Edition), title "Dower," 364, 365.

There was no surrender by the tenant for life, saying nothing about its being by parol; for the agreement, such as it was, was only to enable the remainderman to contract for the sale of the whole estate in the lands; and not that he should be the purchaser of the life estate. And this is proved by the deed of the 2nd October, 1816, by which Elizabeth Vinson the tenant for life, and Solomon Vinson, the remainderman conveyed the lands to William Parsons. Solomon Vinson certainly never had by this transaction any seisin beneficially to his own use, nor any at all. So far from that, he was using all the means in his power to divest himself of his interest; and this he could not do without the union of his mother in the sale of the lands. The intention of the parties was manifestly to make a sale to another person; and it would be strange to presume or construe an intention in Solomon to purchase, where it was not necessary for the execution of his wishes, and when his whole design was to sell and not to purchase. The payment of the $200 to Elizabeth, the tenant for life, only shows that she got her share of the purchase money; and her receipt is fully explained by the deed made to William Parsons.

But it has been argued that Parsons, the bargainee, is estopped by the deed made to him, and that he cannot plead that the husband was never seised; and *Matthew Taylor's Case*, W. Jones 317, is cited from 2 Bac.Abr. (Wilson's Edition), title "Dower," 371 note, and title, "Disseisin," 333, and Johns.Dig. 174, which refers to 6 Johns., to support this position. The doctrine of estoppel does not apply here, for the deed from Elizabeth Vinson and Solomon Vinson to Parsons and the other papers read in evidence clearly show that Solomon Vinson had only a remainder in fee, and that he intended to convey his remainder only, and the mother her life estate, so that the plea does not contradict the deed; for Parsons received from Solomon Vinson such estate only as he had, and as it was intended to grant, without any pretense that he was seised of the freehold. It is clear from the whole evidence that he was not seised of the freehold, for all his holding was under his mother, he paying rent to her and constantly admitting her title.

As to the plantation and the outfields, the petition must be dismissed; but as to the forty-four acres, part of the tract of land called "Addition to Swamp Ridge," there must be a decree for the petitioner. The widow's right to dower in these forty-four acres is admitted by the respondent.